## John Franks *vs.* Moses Wanzer et al.

An application for a continuance of a cause is addressed to the sound discretion of the court in which it is pending, and the exercise of that discretion is not the subject of revision by an appellate court.

But a case might arise which would justify a departure from that rule, where flagrant and manifest injustice has been done by an ill-directed and capricious exercise of such discretion.

In view of the relation in which F., the administrator, stands to the estate of the intestate, nothing short of showing that the intestate had no title to the land for which the notes were given, would discharge him.

The administrator should not have been discharged from his liability to account for the notes; and in order to his final discharge, he must show a failure of consideration for which the notes were given.

Where an executor or administrator, pursuant to the directions of the statute, reports or "gives in" a claim which his intestate or testator held, the amount of such claim is regarded as so much money in his hands, for which he is bound to account.

This is the rule in all cases where there is no ground for denying the validity of the claim thus given in, and its justness is manifest.

An admission, however solemnly made, before the failure in the consideration of the notes had accrued, of the validity or the justice of the claims, cannot, at law or in equity, be binding on the party making it.

It was not the intention of the legislature to place executors or administrators in a worse condition in regard to claims situated like the present, than debtors to the estate are generally placed. *Held*, that the fact of reporting or "giving in" claims in the list of debts, does not operate as an estoppel, and debar the executor or administrator of the right to show that such claims were not valid and just debts.

No one should be permitted to enjoy the fruits of a fraudulent transaction without first doing full justice to the injured party. *Held*, that F. was not charge-

Franks *v.* Wanzer et al.

able with the money received in payment of the land, unless the heirs of B. had released, or offered to release, to the vendee of F.

On appeal from the probate court of Monroe county ; Hon. W. A. Tucker, judge of the probate court.

At the February term, 1845, of the probate court of the county of Monroe, letters of administration were granted to the plaintiff in error, on the estate of Dr. Burrell Huggins, late of said county, deceased, who entered into bond and was qualified according to law.

At the January term, 1846, the administrator returned an appraisement of the personal property belonging to the estate ; also, an account of sales of said personal estate, which were examined by the court, and approved and ordered to be recorded and filed.

At the April term, 1846, an order was made for a citation to issue against said administrator, to report an inventory of the notes and accounts due the estate. (Record, p. 8.)

At the May term, 1846, the cause was continued, and an alias citation awarded.

At the July, August, and September terms, 1846, the cause was continued ; and at the October term, 1846, the administrator returned a partial inventory of the debts, which, so far as it extended, was examined by the court, and ordered to be recorded and filed, and a rule for an attachment to compel the administrator to return a complete inventory.

In the partial inventory returned by the administrator, at the October term, 1846, he returned two notes, Nos. 10 and 11, against himself, as being good for $3,500 each ; this explanation is attached : " The notes of Franks are credited by $1,063, on January 1, 1838, and is entitled to further credits, as will appear by account against estate allowed by court." The total amount of good debts by this report, including the balance on the two notes of the administrator, is stated at $10,589.81. (Record, p. 15.)

The cause was then regularly continued by the administrator from the October term, 1846, to the March term, 1850, for a full inventory. At the March term, 1850, the administrator

Franks *v.* Wanzer et al.

filed his final account for allowance, and had citations, &c., issued, returnable to the 1st Monday of June, 1850. After the filing of this account, and before the settlement, a supplemental account was also filed.

At the May term, 1850, he reported a partial settlement with Tindall; that in addition, the estate of Huggins would be entitled to a large amount of claims from the surviving partner in business; and at the August Term, 1850, he reported additional claims, as having been received from Tindall. (Record, p. 31.)

The final settlement was then continued from term to term, by the administrator, until the May term, 1851, when a decree was pronounced against Franks in favor of Moses Wanzer, a creditor of the estate, and the heirs. Exceptions were filed to said final account by the creditor and others, and sustained by the court, and Franks appealed.

*R. Davis*, for appellant.

*J. M. Acker*, on the same side.

*Goodwin* and *Sale*, for appellees.

*Houston* and *Adams*, on the same side.

Mr. Chief Justice SMITH delivered the opinion of the court.

This was an appeal from a final decree of the court of probates of Monroe county, rendered at the May term thereof in 1851.

It appears from the record, that the appellant, John Franks, who was administrator of the estate of Burrell Huggins, deceased, as such, in 1846, filed a partial inventory of the debts and claims which belonged to the said estate. This inventory contained two notes made by the appellant, each for the sum of $3,500. These notes were classed with the claims which were designated as good debts. The inventory contained the following explanatory remarks, to wit: " The notes of Franks are credited by $1,063 on January 1, 1838, and is entitled to

further credits, as will appear by account against estate in favor of Franks allowed by court."

After various interlocutory proceedings, at the March term of said court, in 1850, the appellant filed his final account for allowance; and at his instance, citations were issued to the parties interested in the estate, returnable to the succeeding June term. In this account the appellant debited himself with the said two notes and interest thereon, from the dates at which they respectively fell due. Appended to this account is the following explanatory statement: " These notes were given for a half section of land and three negroes, claimed by Huggins under a purchase from Isaac Kirkland. An action of ejectment has been brought against Franks, and a recovery had in the ·circuit court of Monroe for this land. A bill in chancery is now pending to set up Huggins's equitable title."

Exceptions were filed to this account by Wanzer, one of the defendants in error. The exceptions were allowed, the account was corrected and restated, and a final decree entered against the appellant, by which he was charged with the amount of the two notes and interest.

At the term at which the case was heard and determined, a motion was made by appellant for a continuance until the result of a certain suit, which was then pending in the vice-chancery court at Fulton, should be known. This motion was overruled, and the appellant compelled to go to trial. This action of the court is assigned for error. It is also insisted, that the court erred in charging the appellant with the amount and interest of these notes.

These objections will be considered as presenting but one question, as the motion to continue was based on the same ground, upon which it is contended that the appellant should not have been charged with the notes.

An application for the continuance of a cause, is submitted to the sound discretion of the court in which it may be pending. This is doubtless the general rule; and the principle is equally general, that the exercise of this discretion is not the subject of revision by an appellate court. This rule rests upon a very solid principle of expediency; but as all rules of prac-

Franks *v.* Wanzer et al.

tice in courts are adopted for the promotion of justice, a case might arise which would justify a departure therefrom. If flagrant and manifest injustice were done by an ill-directed and capricious exercise of such discretion, we are not prepared to say, that it would not be our duty to apply the corrective. But such a question does not arise in the case before us, as we apprehend the motion made in the court below by the appellant should not be regarded as an application for a continuance based upon the ordinary grounds; but rather as a motion to postpone the present consideration of the case, simply for the reason, that in view of all the facts then before the court, and on which alone the decision would be based, it was improper to proceed to a final adjudication of the cause.

At a preceding term of the court, the appellant had, as we have seen, reported the said notes as claims against himself, in obedience to the directions of the statute. This act was doubtless an admission of the validity of the notes or of the justness of the claims. Now if it should be holden, that by such admission he was not estopped from afterwards showing that said claims were unjust at the time, or had subsequently become invalid by reason of the failure of the consideration of the notes, he was in no worse condition than any other debtor of his intestate.

In his final account he debited himself with the amount of said notes; alleging, however, that they were given for a tract of land, in part purchased by him from his intestate, and that a recovery had been had of the land, in an action of ejectment by a party claiming under a paramount title.

From this statement, contained in the account which was sworn to, and the evidence offered in support of the motion, it was highly probable that the consideration of the notes, to a great extent, had failed. It is probable that the appellant, when he filed his account, was under the impression that the recovery which was had of the land had exonerated him from his accountability for the amount of the notes. No such result, however, followed. The equitable title of his intestate may have been good, and of which he might have availed himself to protect his vendee; and if good, the consideration of

11 *

the notes will not have failed. In view of the relation in which appellant stands in regard to the estate of his intestate, we apprehend that nothing short of a showing, that the latter had no title whatever, should discharge him.

Upon this state of facts, therefore, in proceeding to render a final decree in the cause, the court was compelled to charge the appellant with the amount of the notes and interest, in the face of a strong probability that the consideration of the notes had failed, or for that reason to discharge him from his liability, when, by a postponement of the case, it might turn out that he was justly bound.

The question here arises, whether, under these circumstances, it was not error in the court to proceed to a final decree?

It is clear to us, upon the facts which were before the court, that the appellant should not have been held discharged from his obligation to account for the notes. And unless it can be shown, that he would not have been exonerated by a failure in the consideration, we must answer this question in the affirmative.

In reference to the point, whether the appellant could avail himself of a failure of consideration, two positions are assumed.

First, it is insisted, that as the appellant took a conveyance of the land, which was the consideration of the notes, and was let into possession under covenants of warranty, he could not, before actual eviction, set up a failure of the consideration arising from a defect in the title of his vendor.

This position is based upon a principle in regard to actions at law brought upon notes given for the purchase-money of land, which is well recognized in this court. It perhaps might be shown, that this doctrine is not applicable to the case at bar. But the question before us is not, whether the consideration can be impeached before eviction, but whether a failure of consideration could be set up at all by the appellant.

In the second place, it is insisted, that the report or "giving in" of the notes was an admission upon the records of the court of the justice of the claims, it was an acknowledgment of so much money in his hands, and was equivalent to a con-

fession of judgment for that amount. Hence, that the appellant could not afterwards question its correctness.

When an executor or administrator, pursuant to the directions of the statute, (Hutch. Code, 663, §§ 88, 89,) reports or "gives in" a claim which his testator or intestate held, the amount of such claim is regarded as so much money in his hands, for which he is bound to account.

The expediency of this provision of the statute is obvious, and in all cases in which there is no ground for denying the validity of the claim thus "given in," its justice is manifest. But we may readily suppose cases, (and the case at bar, it is insisted, is of that character,) in which its application, on the construction contended for, would work flagrant injustice. The said notes were reported by appellant in obedience to the directions of the statute. He, doubtless, then believed them to be just and valid claims against himself, and in favor of his intestate; for he was required to "give in" claims of that character only. Upon the supposition, first, that the notes were void for want of consideration at the time they were given in, he was not bound to report them; they were not just claims; and they could not be made less unjust, nor rendered obligatory upon him, by an act performed through ignorance of the facts, and by which the rights of third parties were not affected; and second, that the consideration had afterwards failed in consequence of its having become impossible for him to obtain a title to the land through his vendor. An admission, however solemn, made before the failure in the consideration had occurred, of the validity or the justice of the claim, neither at law nor in equity could be binding.

But such would, necessarily, be the result, were the interpretation put upon the statute for which counsel contend. We do not concur with them. We do not believe that it was the intention of the legislature to place executors and administrators in a worse condition, in regard to claims thus conditioned, than the debtors generally of testators and intestates. Hence we hold, that the simple fact of reporting or "giving in claims in the list of debts," does not operate by way of estoppel, and

debar the executor or administrator of the right to show, that such claims were not just and valid debts.

We conclude, therefore, that it was improper and erroneous for the court of probates, upon all the facts before it, to proceed to a final decree in the cause.

In the account as restated and decreed, the appellant was charged with the price of certain land alleged to be the property of the intestate, and which was sold and conveyed by the former during the lifetime of the latter. In this it is likewise insisted there was error.

The proof in regard to this matter was to the following effect: It appears that the legal title to this land stood in the name of the appellant's intestate, who had entered it in the land-office at Pontotoc. In 1840, during the lifetime of the intestate, the appellant sold and conveyed the land to one Rainey for the amount as expressed in the deed. After the death of his intestate, the appellant was proved to have stated, that he had sold, during intestate's life, a quarter section of land, which belonged to him, and " that he had or intended to secure the amount received therefor to the widow and children."

We do not think that this evidence was sufficient to charge the appellant with the receipt of money, which can be considered as assets belonging to his intestate's estate.

It may have been an act of gross fraud on the part of the appellant thus to have sold and conveyed the land of the intestate, without his knowledge or approbation, and to have received the price of it from an unsuspecting purchaser. But the fraud thus practised was not injurious to the parties interested in the estate of the intestate. It did not injure his title to the land, which descended and vested in his heirs. They had no right, therefore, to complain. Moreover, they should not be suffered to enjoy the fruits of a fraudulent transaction, without first doing full justice to the injured party. Hence the appellant was not chargeable with the money received in payment for the land, unless the heirs of the intestate had released, or had offered to release, to the vendee of the appellant. This was not done. Decree reversed, and cause remanded.